UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAVID LANGNER, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-07-00966 |
| § | |
| MICHAEL J. ASTRUE, Commissioner, § | |
| Social Security Administration, § | |
| § | |
| Defendant. § | |

### MEMORANDUM AND ORDER

Pending before the Court in this appeal from a denial of social security disability benefits is Plaintiff's Motion for Summary Judgment (Doc. No. 13). After considering the parties' filings and the applicable law, the Court finds that Plaintiff's motion should be granted, the Administrative Law Judge's decision should be vacated, and the case should be remanded to the Social Security Administration for further proceedings consistent with this Memorandum and Order.

I.  BACKGROUND

Plaintiff David Langner is a fifty-two year-old male with a long history of mental health and physical ailments, including recurring major depression, bipolar disorder, social anxiety, generalized anxiety, obsessive symptoms, alcoholism, and diverticulosis. (R. 18, 61-63, 68.) These ailments became so severe by June 1, 1991, that he was terminated from his job, after which he claims he was unable to maintain steady employment. (R. 61-63.) On August 7, 2003, Plaintiff filed for disability insurance benefits requesting "all insurance benefits for which I am eligible under Title II and Part A of Title XVIII of the Social Security Act . . . ." (R. 61-63.) As

discussed below, Plaintiff alleges that he also applied for Supplemental Security Income ("SSI") on that same date, although that application is not in the record.

Plaintiff's application for benefits was denied on September 30, 2003. (R. 26.) Plaintiff filed for reconsideration on November 24, 2003. (R. 33.) On the form requesting reconsideration that appears in the record, Plaintiff, who was not represented by counsel at the time, wrote that he wanted the Social Security Administration ("SSA") to reconsider the denial of his "disability" benefits, and the sections of that form that dealt specifically with claims for SSI were left blank. (R. 33.) The SSA subsequently affirmed the original denial of benefits (R. 36-39), and Plaintiff, who by this time was represented by an attorney, requested a hearing before an Administrative Law Judge ("ALJ") (R. 40).

A hearing was held on the issue of Plaintiff's benefits claim before an ALJ on February 14, 2006. (R. 717.) Plaintiff testified at the hearing, as did a vocational expert ("VE"), Herman Litt, and a medical expert ("ME"), Dr. John Anigbogu.[1] (R. 718.) At the hearing, all parties agreed that Plaintiff's last insured date was September 30, 1998, and that an application for SSI was not in the record. (R. 722-23.) The ALJ therefore explained that his review of the medical evidence would only include that evidence predating Plaintiff's last insured date, which primarily showed physical, not psychological, ailments. (R. 723.) The ALJ therefore appointed Dr. Anigbogu, a specialist in internal medicine, as the ME, stating:

> [H]ad I found that the [last insured date] did not exist or was not an issue, you can bet your last nickel I would have had a psychologist in here, too . . . . But we have this problem and the majority of the evidence that predates that date was not psych. I mean it had a psych component, but it wasn't heavily psyched.

(R. 723-24.) Plaintiff's counsel expressed his "concern" about the ALJ's decision to appoint an ME who specialized in internal medicine (R. 721), and he indicated on multiple occasions that he

---

[1] Mr. Litt and Dr. Anigbogu were both appointed to testify by the ALJ. (R. 45-49.)

2

would offer additional witnesses and evidence were the ALJ willing to consider medical evidence relating to time periods after the last insured date (R. 754-57). Plaintiff's counsel also offered to put that evidence on to "preserve the issue" for appeal, but the ALJ declined the offer. (R. 757.) The testimony offered at the trial therefore related almost exclusively to the evidence of Plaintiff's ailments prior to his last insured date.

Plaintiff testified to his employment history and medical ailments. (R. 724-48, 753-55.) He described his difficulty maintaining employment since the onset date of his alleged disability, which was the result of various psychological and emotional difficulties that Plaintiff had engaging with others, and of alcoholism. He also explained that his employment history was interrupted by a period of incarceration due to repeated arrests for driving while intoxicated. He stated that he first received psychological treatment in earnest at some point in 1998; before that time, he had primarily received treatment for alcoholism, although Plaintiff did testify that one of his hospitalizations for substance abuse, in 1993, included treatment for depression. He stated that, prior to 1998, his substance abuse counselors advised him that his psychological problems were the result of his drinking. Plaintiff testified that, despite any psychological treatment he received, his psychological instability continued, with periods of extreme highs and lows, lack of motivation to do even simple tasks such as personal hygiene, and obsessive behaviors. Plaintiff estimated that his symptoms prevented him from working approximately two to five days each month. Plaintiff further testified that, prior to 1998, he had a number of physical ailments, including difficultly squatting, bending, and lifting more than 30 pounds. Finally, Plaintiff testified that he was capable of doing various household chores, such as cleaning and taking out the trash, although sometimes his depression kept him from doing so regularly. He also testified that he enjoyed outdoor recreation such as swimming and boating.

While the hearing transcript of the ME's testimony is spotty, it appears that he focused his testimony primarily on Plaintiff's substance abuse, although he did identify a medical report that confirmed Plaintiff's testimony that he was hospitalized in 1993 for major depression. As explained above, the ME's testimony was limited only to the medical evidence dated before Plaintiff's last insured date. Based on that evidence alone, he testified that Plaintiff's ailments did not meet or equal any of the disability listings. (R. 748-53.)

The VE's testimony focused on Plaintiff's relevant work history and residual functional capacity ("RFC"). (R. 757-62.) The VE stated that Plaintiff had past relevant work as a sales representative, which he characterized as somewhere between light and medium work, although closer to light. He also identified past relevant work as a courier, which he characterized as light and unskilled, and as a retail salesperson, which he described as light and semiskilled. Based on this work history, the VE testified that Plaintiff had skills that were transferable to sales and sales representative jobs. In response to a hypothetical question from the ALJ, he testified that an individual with Plaintiff's background and experience, and without any medical restrictions on doing medium work, would be able to perform all of Plaintiff's past relevant work. The VE testified that thousands of jobs would be available in the Houston area, and many hundreds of thousands nationally, to such an individual. However, when asked by Plaintiff's counsel how such an individual would fare if he were required to miss work three or four times per month, or if he had psychological or emotional breakdowns on the job twice a month, the VE testified that the individual would be unable to maintain any type of employment.

At the end of the hearing, the ALJ stated that the record would stay open for two weeks. (R. 762.) Two days later, on February 16, 2006, Plaintiff's attorney sent a letter to the ALJ stating, "Enclosed, please find paperwork showing that Mr. Langner filed an SSI application

when he applied for disability benefits." (R. 22.) According to the record, three pages were attached to the letter: a notice from the SSA inviting Plaintiff to apply for SSI; a request for reconsideration form, signed and dated September 24, 2003, that lists an "SSI claim" number, states that the request is for "S.S.I. (see supporting documents)," and requests an informal conference in a section of the form marked "Supplemental Security Income or Special Veterans Benefits Reconsideration Only"; and a letter from Shirley Langner advising the SSA that she is "no longer assisting David Langner with . . . his living expenses" and requesting that the SSA "reconsider [its] decision denying him S.S.I. benefits . . . ." (R. 23-25.) The "supporting documents" referenced on the reconsideration form appear not to be in the record.

On April 12, 2006, the ALJ issued his opinion denying Plaintiff disability benefits. (R. 15-21.) In so doing, the ALJ applied the familiar five-step sequential evaluation process for determining whether an individual is disabled, 20 CFR § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any relevant time. (R. 18.) At step two, the ALJ found that Plaintiff had the following severe impairments: diverticulosis, bipolar disorder, and alcohol abuse. (R. 18.) At step three, however, the ALJ found that Plaintiff's impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 CFR § 404.1520(d), 404.1525, and 404.1526. (R. 18.) He based this finding on the testimony of the ME, who had stated his opinion that Plaintiff did not meet any of the disability listings. (R. 18.) The ALJ further noted that the medical evidence of Plaintiff's treatment for substance abuse and of Plaintiff's diverticulitis were consistent with the ME's opinion. (R. 18.) Addressing Plaintiff's hospitalization for depression in 1993, the ALJ attributed the depression to substance abuse, citing Dr. Terry Rustin, the treating physician who

gave Plaintiff a primary Axis I diagnosis of alcohol dependence upon Plaintiff's discharge. (R. 18.)

Next, the ALJ found that, as of the last insured date, Plaintiff had the RFC to "lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk for 6 hours each in an 8 hour day, and sit for about 6 hours in an 8 hour day." (R. 18.) The ALJ further found that Plaintiff's allegations of the intensity, duration, and limiting effects of his impairments were not entirely credible. (R. 19.) The ALJ noted that the medical evidence showed no neurological deficits, significant orthopedic abnormalities, or serious dysfunctions of any bodily organs, and that Plaintiff was capable of performing activities of daily living, including swimming and boating. (R. 19-20.) He noted that Plaintiff's diverticulitis had not resulted in significant weight loss. (R. 19-20.) As for Plaintiff's psychological ailments, the ALJ again attributed Plaintiff's "mental problems" before his last insured date to Plaintiff's alcoholism, citing to the ME's testimony, Dr. Rustin's diagnosis, a further diagnosis of substance-induced depression by treating physician Dr. Elizabeth Weinberg, and Plaintiff's history of substance abuse. (R. 19-20.)

At step four of the analysis, citing the VE's testimony and occupational guidelines from the Department of Labor, the ALJ found that Plaintiff was capable of performing his past relevant work as a sales representative, courier, or retail salesperson. (R. 20.) The ALJ therefore properly ended his sequential analysis, finding that Plaintiff was not under a disability as defined in the Social Security Act as of his date last insured. (R. 21.) The SSA Appeals Council subsequently denied review of the ALJ's decision (R. 4), and Plaintiff filed the instant case, maintaining that the ALJ erred in denying his benefits claim.

## II.     ANALYSIS

### A.     Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

### B.     Standard of Review

Judicial review of an ALJ's denial of benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"

*Id.* (internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir. 1973)).

### C. Legal Standard

A disability claimant bears the initial burden of proving that he is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). A person claiming a disability must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). While "[a] claimant is eligible for [disability] benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured," *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990), a claimant's eligibility for SSI payments is not dependent on insured status, *see* 42 U.S.C. § 1382(a).

The Court evaluates a disability claim via a five-step process, as follows:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa*, 895 F.2d at 1022). "A finding that a claimant is not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

### D.     Plaintiff's Claim

Plaintiff makes two arguments on appeal: that the ALJ erred as a matter of law by not adjudicating Plaintiff's claim for SSI, and that the ALJ erred as a matter of both fact and law in his RFC analysis. With regard to the first argument, Plaintiff alleges that the record that the ALJ relied on was incomplete because it did not include documents provided to the SSA before the hearing. Specifically, Plaintiff alleges that the record omits documents he submitted to the ALJ at the time of the hearing, specifically, records from Baylor Psychiatric Clinic and the Mental Health and Mental Retardation Authority of Harris County, and a letter from Plaintiff to his counsel dated January 19, 2006. (Pl.'s Mot. Summ. J. 3.) According to Plaintiff, these documents establish that Plaintiff applied for SSI on August 7, 2003, and, when viewed in combination with the evidence in the record, that Plaintiff was entitled to benefits. He argues that the ALJ's failure to consider these documents amounts to a denial of a hearing in violation of 42 U.S.C. § 405(b)(1). With regard to the second argument, Plaintiff maintains that the ALJ erred by not finding that Plaintiff's ailments met or equaled Listing 12.04, dealing with "Affective Mood Disorders." (Pl.'s Mot. Summ. J. 9-10.) He further argues that the ALJ's RFC analysis was erroneous because it failed to account for Plaintiff's emotional and psychological limitations, which Plaintiff believes indicate a less-than-sedentary RFC. (Pl.'s Mot. Summ. J. 10-12.) In its Response, Defendant argues that the ALJ lacked jurisdiction to consider Plaintiff's SSI claim for the reasons offered in the ALJ's opinion (Def.'s Resp. 4-5), and that substantial

evidence supports the ALJ's findings as to both Listing 12.04 (Def.'s Resp. 3-4) and Plaintiff's RFC (Def.'s Resp. 5-7).

The Court finds that the ALJ's decision is the product of legal error and is not supported by substantial evidence. It therefore must be vacated. As explained above, the ALJ found that Plaintiff had not filed an application for SSI, and as a result he declined to consider medical evidence relating to Plaintiff's disabilities after September 30, 1998, Plaintiff's last insured date. In discussing this finding, however, the ALJ did not properly consider all of the available evidence: the ALJ stated that Plaintiff had submitted a notice from the SSA inviting Plaintiff to apply for SSI, but he did not make any reference to the other documents Plaintiff's counsel sent to the ALJ on February 16, 2006, after the hearing but while the record was still open. Most notable among these other documents is the "Request for Reconsideration" form dated September 24, 2003, which purports to list an SSI claim number and which requests an informal conference specifically to discuss the denial of an SSI application. (R. 24.) The letter from Shirley Langer requesting that the SSA reconsider the "decision denying him S.S.I. benefits" is somewhat less probative as to the question of whether Plaintiff applied for SSI, but it at least suggests that such an application was filed. (R. 25.)

The Court expressly does not decide today whether these documents, by themselves, are enough to establish the existence of an SSI application. But the failure even to consider them is error. The duty to consider all evidence in the record when making a determination or decision about a claimant's disability is not only axiomatic to the proper functioning of the social security system, it is explicitly required in the SSA regulations. 20 C.F.R. § 416.920(a)(3) (requiring the ALJ to "consider all evidence in [the] case record when [making] a determination or decision whether [a claimant is] disabled" for purposes of SSI); 20 C.F.R. § 404.1520(a)(3) (same for

disability insurance).  Moreover, the ALJ supported his finding of "insufficient" evidence of an SSI application by discussing the SSA notice, but he did not discuss, or even make oblique reference to, the letter or the reconsideration form.  The latter pieces of evidence are clearly more probative of the issue than former, yet they were entirely absent from the ALJ's analysis.  No "reasonable mind" would accept this analysis as adequate to support the ALJ's conclusion, therefore, the ALJ's finding was not based on substantial evidence.

As for Plaintiff's additional evidence, attached to his Motion, it appears to corroborate his contention that he applied for SSI.  Included in that evidence is what appears to be an internal SSA "DIB Review Sheet" dated December 6, 2005, that states that Plaintiff filed an application for SSI on August 7, 2003, and that the claim was denied on August 13, 2003.  Plaintiff alleges that this document was provided to the ALJ before the hearing, and Defendant has not explicitly denied this allegation.  Furthermore, the Court knows of no reason why the application and denial referenced on the form, much less the form itself, should not have been in the record before the hearing.

Finally, the record abounds with evidence that the Plaintiff's case was prejudiced by the ALJ's finding that no SSI application had been filed.  To begin with, the ALJ explicitly stated at the hearing that he would have conducted the hearing differently had such an application been filed, most importantly by considering the copious evidence of Plaintiff's psychological ailments and appointing an ME with expertise in mental health.  Additionally, Plaintiff's counsel referenced his concern that no such ME was available for the hearing, was denied the opportunity to offer and explain evidence tending to prove Plaintiff's eligibility for SSI, and stated that he would have called additional witnesses had the ALJ been willing to consider evidence of Plaintiff's disabilities after the last insured date.

This error alone is grounds for reversal and remand. For this reason, and because further review of the evidence by an ME with expertise in the area of mental health could produce new probative evidence about Plaintiff's RFC, the Court will not now address Plaintiff's second argument of error.

## III. CONCLUSION

The ALJ committed legal error by failing to consider all available evidence, and he made findings that were unsupported by substantial evidence. Plaintiff's Motion for Summary Judgment (Doc. No. 13) is therefore **GRANTED** to the extent that the ALJ's decision is **VACATED**. It is further **ORDERED** that, on remand, the parties shall be given adequate opportunity to supplement the record with new evidence, and Plaintiff shall be allowed to make reasonable discovery requests of the SSA for the purpose of obtaining any evidence of Plaintiff's prior applications for SSI and any SSA decision thereof. The case is hereby **REMANDED** to the ALJ for further proceedings consistent with this Memorandum and Order.

**IT IS SO ORDERED.**

SIGNED this 24 day of March, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT